People of the State of Illinois, Plaintiff-Appellee, v. Ivory Marshall, and Samuel Porter (Impleaded), Defendants-Appellants.

Gen. Nos. 52,616, 52,617. (Consolidated.)

First District, Third Division.

June 26, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty, Assistant Public Defender, of counsel), for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Gerald T. Rohrer, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Ivory Marshall, Samuel Porter, and Joe Hollins were indicted for the crime of burglary. The three defendants entered pleas of not guilty and waived trial by jury. The trial court found defendant Hollins not guilty and found defendants Porter and Marshall guilty of burglary and sentenced each of them to a term of from two to seven years in the Illinois State Penitentiary. The defendants Samuel Porter and Ivory Marshall prosecute the instant appeal.

The defendants contend that 1) they were erroneously denied their demand for the production of a purported statement of the complaining witness for purposes of possible impeachment and 2) the trial court erred in refusing to grant the defendants a "plea-bargaining" conference during the trial at the close of the State's case.

The arresting police officers, Henry Ciolli and William Ziegler, testified for the prosecution that at about 2:25 a. m. on February 17, 1967, they were cruising in their patrol car in the vicinity of Washington and Halsted Streets when they observed the three defendants talking on a street corner. Several minutes later, they were cruising on the south side of Washington Street when they saw Joe Hollins in front of 802 West Washington Street. Hollins was "continually turning around looking about." As the police approached that address they saw the defendant Porter followed by the defendant Marshall emerge from a broken glass door at 802 West Washington. Upon seeing the police, all three men ran and all three were stopped within a block of 802 West Washington. Marshall was carrying an adding machine when apprehended and a search of Porter revealed that he was wearing a green button-down sweater under his coat and had a quantity of pens and pencils in his back pocket.

John Kenny testified that he was the president of Kenny Bros., Inc., an Illinois corporation located at 802 West Washington Street in Chicago. He testified that the adding machine, sweater, and pens and pencils found on the two defendants were the property of the corporation. When he arrived at his place of business on the morning of February 17, 1967, he discovered that the front door had been broken and that some of the furniture was in disarray.

Each of the three defendants testified on his own behalf. Each denied any participation in the burglary and each denied knowing the other two defendants.

During the cross-examination of John Kenny and after the State had given defense counsel a copy of the witness's testimony before the Grand Jury, defense counsel asked the witness if he had occasion to talk to a secretary in the State's Attorney's office. Kenny responded:

"After the hearing before the Grand Jury, I remember sitting with one of the officers at which

time a lady did take a statement. And, as to what was said at that time or what statement I made, I don't remember. It's been six or eight months ago." The witness further stated that he did not remember whether the lady had read the statement back to him. At this time the defendant moved for a production of this statement whereupon the State's Attorney informed the court that the statement being referred to was merely a "summary sheet." The court then ruled that the defendants were not entitled to such a statement.

■ ■ The trial judge denied the production of the requested statement solely upon the State's representation to him in an adversary proceeding that what was sought was merely a summary sheet prepared by the State's Attorney's office. It might have been a most accurate description of the statement but the trial judge erred in not initially inspecting the sought after "summary sheet." The State argues in its brief that a "summary sheet" need not be produced under the decisions of People v. Moses, 11 Ill2d 84, 142 NE2d 1; People v. Wolff, 19 Ill2d 318, 167 NE2d 197; and People v. Neiman, 30 Ill2d 393, 197 NE2d 8, since it is merely a rough summation of the witness' words and is not a statement which is in the witness' "own words or substantially verbatim." (See: People v. Neiman, supra, at page 397.) The State premises such an argument on the assumption that this summary sheet was, as its designation implies, a mere synopsis or summation of the witness' statements to the stenographer. In view of the fact that the trial judge never viewed the purported summary sheet and in view of the fact that the statement does not appear in the record before us, we find it impossible to blindly accept such a premise. Likewise, the trial judge could not and did not ascertain whether the statement should have been produced to the defendant under the Moses-Wolff line of authority. When an accused for impeachment purposes demands production of a witness' statement in the

possession of the People and when the prosecution claims that the statement is privileged, irrelevant, or incompetent, the trial court is to examine the statement to determine if such claims are justified. People v. Williams, 72 Ill App2d 96, 218 NE2d 771; People v. Beard, 67 Ill App2d 83, 214 NE2d 577.

■ However upon a review of the entire record, we fail to see how the aforementioned error prejudiced the defendants so as to require a reversal of these judgments even if an inspection of the statement proved it to be properly producible to the defendants under the Moses-Wolff rules. In People v. Wolff, supra, the Supreme Court, after indicating that the defendant was improperly restricted in his attempts to obtain documents held by the prosecution for the purpose of possible impeachment of a State's witness, held that the refusal to let the defendant see the statement of one witness did not constitute reversible error where upon all the evidence, his guilt was established beyond a reasonable doubt and the jury could not have reached a different verdict. (See also: People v. Williams, 105 Ill App2d 25, 245 NE2d 17.) Likewise in the instant case, we fail to see how the production of Kenny's statement, even if properly producible, could have affected the instant finding. Kenny's testimony simply established the formal elements of the corporate ownership of the burglarized premises and the ownership of the items found in the possession of Marshall and Porter. There is no indication from the record that such ownership was at any time questioned by the defendants. It is undisputed that the defendants were furnished with Kenny's testimony before the Grand Jury and that this testimony was not used for impeachment purposes. Furthermore, the testimony of the police officers established that the premises at 802 West Washington Street were broken into, that they saw the defend-

ants Marshall and Porter emerge from this building, and that they possessed the stolen items when arrested. This evidence prompts us to conclude that the undue restrictions on the defendants' discovery attempts could not have affected the finding of guilty as to these two defendants.

The defendants also assert as error the trial court's refusal to grant them a "plea-bargaining" conference at the close of the State's case. Counsel for the defendant Hollins refused to join in this request and objected to such a conference as possibly prejudicing the case of his client. The court then denied the request. The defendants characterize such a denial as an effective denial of their right to plead guilty and a violation of the equal protection clause of the Fourteenth Amendment. The record does not disclose that the defendants were at any time denied an opportunity to change their pleas to guilty. They were simply denied the right to enter into a conference for the ostensible purpose of plea bargaining in hopes of being found guilty of a lesser offense. We have not been directed to any authority which gives an accused at trial a constitutional, statutory, or other lawful right to bargain for a conviction for a lesser offense and we therefore find no merit to this contention advanced by the defendants.

For the foregoing reasons, the judgments are affirmed.

Affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.